### BENJAMIN G. BOARDMAN *vs.* CHARLES M. HOLMES & trustees.

Suffolk.     March 18. — May 25, 1878.     COLT & AMES, JJ., absent.

A., by an agreement reciting certain indebtedness of his to a firm, part of which consisted of drafts accepted by the firm for his accommodation, assigned to B., a member of the firm, as security, certain personal property, and also all claims for loss under all policies of insurance on certain property, the same to be made payable to B., and any balance remaining in B.'s hands, after settling in full all such indebtedness, to be paid over to A. Subsequently, a loss by fire occurred on the property, and A. executed a general assignment to B. of all the policies in force thereon at the time of the loss, enumerating them, with authority to collect the same, and, after satisfying all claims of the firm " by reason of any and all pecuniary obligations, under which the firm now is," to account to A. for the balance. A. then indorsed and signed on the several policies the following: "Pιy all claims under this policy to B., value received." *Held*, that B. was entitled to hold the policies as security for the whole amount due on all accounts from A. to the firm.

TRUSTEE PROCESS. Ten insurance companies, summoned as trustees of the principal defendant, answered, admitting funds in their hands belonging to him. James O. Safford appeared as claimant of the funds in the hands of the trustees. At the hearing in this court, before *Soule*, J., without a jury, the following facts appeared:

On April 17, 1876, the defendant was indebted to the claimant's firm in the sum of about $14,000, partly for leather and other goods sold by the firm to the defendant on open account, partly on notes given to the firm by the defendant in payment of other goods so sold to him, and partly for money paid on drafts drawn by the defendant on said firm, and accepted by it, which said firm had taken up and paid, and then held against the defendant. Drafts, amounting to $2669.81, had been accepted by the firm for the accommodation of the defendant, and were then outstanding in the hands of third parties. On December 14, 1875, the defendant executed and delivered to the claimant the following agreement, under seal:

"Whereas, on this fourteenth day of December, A. D. 1875, in consideration of certain engagements and pecuniary obligations entered into and to be entered into and guaranteed by the firm of James O. Safford & Co., of Boston, for the benefit of C. M. Holmes, of Malden, doing business under the firm style of C. M. Holmes & Co., at Boston and Westborough, certain conveyances of real estate have been made to James O. Safford, of said firm of James O. Safford & Co., to be held by him as security against loss by said firm of Safford & Co., for such engagements and cbligations, said conveyances being made by parties other than said Holmes :

" Now, therefore, I, said C. M. Holmes, in consideration of such engagements and obligations on the part of said firm of Safford & Co. in my behalf, and as further security against loss by said firm in the premises, do hereby agree to, and do by these presents transfer and assign to said Safford all notes, drafts, checks, orders and accounts made or received for goods made of stock or materials furnished by said firm of Safford & Co., and all loss or claims for loss under any policy of insurance on stock, tools and machinery, manufactured goods and stock in process of manufacture, and to make the same payable to him in case of loss, whether the same are now or hereafter to be effected ; and that all manufactured goods, from the time they are delivered from the factory, shall be the sole and exclusive property of said Safford, to be had, held and received by him as security to said firm of James O. Safford & Co., against all or any loss for or on account of such engagements and obligations.

" And any balance remaining in the hands of said Safford, after liquidating and settling in full all indebtedness on my part to said firm, and all liability incurred by said Safford & Co. for me, is to be paid over to me."

No assignment had been made of any of the policies of insurance, nor had the same been made payable to the claimant in case of loss. On the night of April 14, 1876, a loss occurred, and on the morning of April 17, 1876, the defendant went with the policies, issued by the trustees in this action, to the office of the claimant's counsel, who thereupon drew up the following assignment :

" Know all men by these presents, that I, C. M. Holmes & Co., the assured in the following-named insurance companies, and by policies therein, as follows, [then followed a list of the companies, and the amount insured by each,] do hereby, for value received, assign and convey unto James O. Safford, of Boston, all claim for loss under said policies, and all claim on or against said several insurance companies for loss thereunder by reason of the fire at our factory in Westborough, and to collect the same in our name, we to prove loss, and, after satisfying all claims against us by the firm of James O. Safford & Co., of which firm said Safford is a partner, by reason of any and all pecuniary obligations under which said firm now is on my account, said Safford is to account to us for any balance of moneys received by him from said companies."

At the same time, the following indorsement was written upon each policy: " Boston, April 17, 1876. Pay all claims under this policy to James O. Safford, of Boston, value received." The defendant signed the assignment and the indorsements on the policies, and then delivered the assignment and the policies together to the claimant's attorney, the whole being done at one sitting.

The plaintiff asked the judge to rule that the indorsements and the assignment must be construed together, and that under them the claimant was only entitled to hold the claims under the insurance policies, and the amounts collected by him from the companies which issued them, as security for the obligations specified in and according to the terms of the assignment of April 17, and that the claimant's claim could only be established for the amount of the drafts accepted by him for the defendant's accommodation, and on April 17 outstanding in the hands of third parties, namely, $2669.81, with interest thereon. The judge refused so to rule, but ruled that the absolute assignment made on the back of the policies was not restricted by the language of the assignment made and delivered at the same time and that the claimant might hold the claims assigned as security for the whole amount then due on all accounts from the defendant to him; and found in favor of the claimant for the whole amount due April 17 from the defendant to the claimant, and not paid thereafter. And the trustees were discharged to that

amount. To these rulings and refusals to rule, the plaintiff alleged exceptions.

*M. Storey*, for the plaintiff.

*E. R. Hoar*, for the claimant.

ENDICOTT, J. It appears from the agreement of December 14, 1875, that certain engagements and pecuniary obligations had been previously entered into by the firm of James O. Safford & Co. for the benefit of the defendant, for which the firm held conveyances of real estate from other parties as security. To give the firm further security, the defendant executed the agreement of December 14, whereby he assigned to the claimant, a member of the firm, certain personal property, notes, drafts and accounts, and also all claims for loss on all policies of insurance on the property, with the agreement to make the same payable to him. Any balance remaining in the hands of the claimant, after settling in full all indebtedness of the defendant to the firm, was to be paid over to the defendant. The policies were not then assigned or made payable to the claimant.

On April 14, 1876, there was a fire in the defendant's factory, and a loss occurred. On the 17th, the defendant executed a general assignment to the claimant of all policies in force on the property at the time of the loss, enumerating them, with authority to collect the same, and, after satisfying all claims of the firm, "by reason of any and all pecuniary obligations under which the firm now is," to account for the balance to the defendant. On the same day, the defendant indorsed and signed on the several policies the following assignment: "Pay all claims under this policy to James O. Safford, value received."

The defendant at this time was largely indebted to the firm, by reason of the transactions referred to in the agreement of December 14; and a portion of the debt consisted of drafts accepted by the firm for the accommodation of the defendant, then outstanding in the hands of third persons, and upon which the firm was liable. And the plaintiff contends that the claimant can hold the amounts collected on the policies only for the purpose of indemnifying the firm for these pecuniary liabilities, and not for the general debt of the defendant; in other words, that the general assignment of the policies on April 17 is limited to secure only the pecuniary obligations of the firm, and that the

special assignment on each policy, made at the same time, is to be construed in connection with the terms of the general assignment.

But, in determining the effect to be given to the absolute assignment on the policies, we must look to the whole transaction between the parties. The assignments made after the fire do not represent a separate and independent transaction, and are not to be construed by themselves alone; they were obviously made in pursuance of and for the purpose of perfecting and completing the original agreement of December 14, and are to be construed in connection with it. Even if the general assignment of the policies limits the application of the proceeds, as the plaintiff contends, the special assignment on each policy contains no such limitation, but is absolute in its terms. It is not inconsistent, but is strictly in accordance, with the stipulations of the original agreement, and is not to be restricted in its meaning by the language of the general assignment.

We are therefore of opinion that the ruling of the presiding judge was right, and that the claimant is entitled to hold the policies assigned to him as security for the whole amount due on all accounts from the defendant to the firm.

*Exceptions overruled.*